Nos. 22-15166 & 22-15167

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CORONAVIRUS REPORTER et al.,

*Appellants*,

*v.*

APPLE INC.,

*Appellee.*

_____

On Appeal from the United States District Court
for the Northern District of California (Hon. Edward M. Chen)
No. 3:21-cv-05567-EMC

_____

**APPLE INC.'S RESPONSE TO
APPELLANTS' PETITIONS FOR REHEARING**

_____

Cynthia E. Richman
Zachary B. Copeland
Harry R. S. Phillips
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Rachel S. Brass
Julian W. Kleinbrodt
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105
(415) 393-8293
RBrass@gibsondunn.com

*Attorneys for Apple Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

LEGAL STANDARD ............................................................................2

ARGUMENT .........................................................................................3

    I.    The Panel Correctly Rejected Appellants' "Scattergun" Markets Under Well-Established Supreme Court And Ninth Circuit Law ........3

    II.    The Panel Correctly Rejected Appellants' Unalleged *Per Se* Tying  Theory Under Well-Established Supreme Court And Ninth Circuit Law.............................................................................10

    III.    Isaacs' Petition Is Untimely And Improper .......................................12

CONCLUSION ....................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ...........................................................7

*Allen v. Ornoski*,
  435 F.3d 946 (9th Cir. 2006) ...........................................................11

*Anderson v. Knox*,
  300 F.2d 296 (9th Cir. 1962) .............................................................3

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) .............................................................4

*Armster v. U.S. Dist. Court. for Cent. Distr. of Cal.*,
  806 F.2d 1347 (9th Cir. 1986) ...........................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985)...........................................................................7

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)..........................................................................11

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)...........................................................................5

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) .............................................................8

*Chapman v. N.Y. State Div. for Youth*,
  546 F.3d 230 (2d Cir. 2008) ..............................................................4

*Coronavirus Reporter v. Apple Inc.*,
  85 F.4th 948 (9th Cir. 2023) .......................................1, 3, 4, 6, 9, 11

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
  136 F.3d 554 (8th Cir. 1998) .............................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Epic Games, Inc. v. Apple Inc.*,
   67 F.4th 946 (9th Cir. 2023) ...................................................12

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1983) ...............................................12

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ...............................................4, 7

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ......................................1, 4, 5, 9

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006).................................................................8, 9

*Int'l Salt Co. v. United States*,
   332 U.S. 392 (1947)...................................................................8

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984).......................................................................8

*Kaplan v. Burroughs Corp.*,
   611 F.2d 286 (9th Cir. 1979) ...................................................6

*Kaufman v. Time Warner*,
   836 F.3d 137 (2d Cir. 2016) ...................................................9

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .................................................5

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) .............................................4, 5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) .................................................4, 9

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008) ...............................................8, 9

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
   792 F.2d 210 (D.C. Cir. 1986)..................................................6

**TABLE OF AUTHORITIES**
**(continued)**

<u>Page(s)</u>

*Somers v. Apple Inc.*,
    729 F.3d 953 (9th Cir. 2013) ...................................................................1, 11, 12

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) .............................................................................4

*Truck-Rail Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*,
    244 F. App'x 130 (9th Cir. 2007) ........................................................................8

*TV Comm'cns Network, Inc. v. Turner Network Television, Inc.*,
    964 F.2d 1022 (10th Cir. 1992) ...........................................................................4

*United States v. Microsoft*,
    253 F.3d 34 (D.C. Cir. 2001) .............................................................................12

**Rules**

Fed. R. App. P. 35 ............................................................................................2, 3, 6

Fed. R. App. P. 40 ....................................................................................................3

**INTRODUCTION**

The Court's November 3, 2023 decision affirming the dismissal of Appellants' Complaint was well-reasoned and thorough, adhering closely to established antitrust law under Supreme Court and Ninth Circuit precedent. This Court concluded, like the district court, that Appellants had failed to allege two basic prerequisites to any antitrust claim. *See Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948, 956–57 (9th Cir. 2023). First, the Court held that Appellants failed to meet the well-established requirement of pleading a relevant market. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Second, the Court held that Appellants failed to satisfy the equally well-established requirement of pleading antitrust injury. *See, e.g.*, *Somers v. Apple Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). In reaching these conclusions, the Court's decision broke no new legal ground.

Nevertheless, Appellants have filed two petitions for rehearing—one (timely) petition by the Entities, and another (untimely) petition by Isaacs.[1] The Court has ordered Apple to respond to the Entities' petition, but both are meritless. The

---

[1]  This brief employs the same nomenclature in referring to the various Appellants as did Apple's Answering Brief. *See* ECF 38, at 1 n.1. Apple refers to the appellants in originally docketed case number 22-15166 as "the Entities"; the appellant in originally docketed case number 22-15167 as "Isaacs"; and the appellants collectively as "Appellants." Similarly, Apple refers to the Entities' Petition, ECF No. 69-1, as "Entities Pet." and Isaacs' Petition, ECF 60-1 in Dkt. 22-15167, as "Isaacs Pet."

petitions are filled with invective and conspiratorial accusations toward not only Apple[2] and its counsel,[3] but also toward the panel,[4] Google,[5] and Senator Chuck Schumer.[6]  They say little, however, on the merits, retreading repeatedly rejected arguments, citing virtually no caselaw, and ignoring uniform binding precedent that forecloses their arguments.  In short, Appellants do not identify anything in the panel's decision that conflicts with precedent in this Circuit or raises important, unresolved questions.  The petitions should be denied.

## LEGAL STANDARD

Rehearing en banc "is not favored" and "ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a).  Petitions therefore should be denied where they do not present

---

[2] *See, e.g.*, Entities Pet. at 1 n.1 ("[I]t appears undisputed that Apple operates, or at least oversees, a surveillance network with capabilities that exceed CIA and all foreign intelligence agencies combined.").

[3] *See, e.g.*, Isaacs Pet. at 6–7 (appearing to attribute Isaacs' expulsion from medical school in 2005 to counsel).

[4] *See, e.g.*, Entities Pet. at 3 (arguing that "the Panel parroted the farcical narrative Apple told the District Court").

[5] *See, e.g.*, Isaacs Pet. at 6 (alleging that Google participated in purported "retaliation against witnesses").

[6] *See* Entities Pet. at 2 ("This year, a sweeping bipartisan bill to curtail Apple's power had overwhelming 73% popular support, but suspiciously, Senate Majority Leader Chuck Schumer of California never brought it to floor vote.").

any "conflict[] with a decision of the [Supreme Court or Ninth Circuit]" or any "questions of exceptional importance." Fed. R. App. P. 35(b)(1). Likewise, panel rehearing is limited to "ensur[ing] that the panel properly considered all relevant information in rendering its decision," *Armster v. U.S. Dist. Court. for Cent. Distr. of Cal.*, 806 F.2d 1347, 1356 (9th Cir. 1986), and should be granted only if the panel "overlooked or misapprehended" a "point of fact or law," Fed. R. App. P. 40(a)(2).

## ARGUMENT

Neither rehearing en banc nor panel rehearing is appropriate here. Applying settled antitrust law to the alleged facts, the Court, like the district court, reached the inescapable conclusion that Appellants failed to define a plausible relevant market or allege a plausible antitrust injury. *See Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948, 956–57 (9th Cir. 2023). The petitions for rehearing identify no legitimate conflict with precedent, no fact or authority overlooked by the panel, and no question of exceptional importance requiring further review. The petitions instead attempt to "reargue [the] case anew." *Anderson v. Knox*, 300 F.2d 296, 297 (9th Cir. 1962). That is "not the proper function of a petition for a rehearing," *id.*, and Appellants' petitions should be denied.

## I. The Panel Correctly Rejected Appellants' "Scattergun" Markets Under Well-Established Supreme Court And Ninth Circuit Law

The Court held that Appellants had "not adequately defined the relevant market" because not only did the Complaint reference "at least fifteen 'relevant

3

markets'" in "scattergun fashion"—none of which had been adequately "define[d]" or "distinguishe[d] . . . from one another"—but also because "the narrower set of markets posited" in Appellants' briefing "lack[ed] sufficient clarity to state an antitrust claim plausibly." *Coronavirus Reporter*, 85 F.4th at 956. Appellants appear to challenge this ruling on two bases. First, they argue that they need not have alleged a plausible market. *See, e.g.*, Entities Pet. at 6; Isaacs Pet. at 2–3. Second, they argue that the panel "overlooked" their purported "iOS notary stamps" market. *See* Entities Pet. at 12. Neither is correct.

**A.** As the panel recognized, "[a] threshold step in any antitrust case is to accurately define the relevant market." *Coronavirus Reporter*, 85 F.4th at 955 (quoting *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020)). Failure to "plead a relevant market" is fatal to an antitrust complaint. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Any suggestion otherwise is foreclosed by decades of unbroken precedent. *Id.*; *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 & n.3 (9th Cir. 2008); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1064 (9th Cir. 2001).[7]

---

[7] Other courts are in accord. *See, e.g.*, *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (affirming dismissal of complaint for failure to allege plausible market); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 633 (5th Cir. 2002) (same); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997) (same); *TV Comm'cns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (same).

*First*, Appellants appear to claim that market definition is an evidentiary question that cannot be resolved before trial under *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962). *See* Entities Pet. at 4, 7–8; Isaacs Pet. at 4. But *Brown Shoe*— a post-trial decision condemning a merger—does not stand for the proposition that market definition need not be plausibly alleged. At most, it illustrates the factual inquiries that market definition may entail in appropriate cases—evidentiary facts that Appellants failed to allege in this case. *Brown Shoe*, 370 U.S. at 325; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008) (plaintiffs must plead "necessary evidentiary facts to support [their] conclusions"). It does not displace the well-established rule—affirmed by this Court time and again since *Brown Shoe* and conceded elsewhere by Appellants (Entities Pet. at 6)—that "a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Hicks*, 897 F.3d at 1120 (quoting *Newcal*, 513 F.3d at 1045).

Notably, the Entities later switch positions and argue the panel erred by applying the "antitrust laws of yesteryears" rather than "modify[ing]" *Brown Shoe* because it is "anachronistic" and "inapplicabl[e]" to this case. Entities Pet. at 10– 12. This Court of course cannot modify or ignore Supreme Court doctrine, but more importantly, this argument militates *against* rehearing. Rehearing is appropriate only if a decision "conflicts with a decision of the United States Supreme Court,"

Fed. R. App. P. 35(b)(1)(A), not where a petitioner simply disagrees with one of those decisions and wishes for it to be overruled. Regardless, Appellants argue a strawman. The Court never suggested *Brown Shoe* required Appellants to use "traditional market analysis methodologies" inapplicable to this case. Entities Pet. at 10. The problems, as the Court explained, were twofold: Appellants failed even to outline a coherent set of markets (a threshold defect Appellants ignore), and, further, the markets the Complaint did reference were unsupported by any facts bearing on "cross-elasticity of demand." *Coronavirus Reporter*, 85 F.4th at 955–56.

It is no response that some of the goods in some of their purported markets are "free applications." Entities Pet. at 10; *see also* Isaacs Pet. at 1. This does not relieve Appellants of their obligation to allege a coherent market definition. Nor does it excuse Appellants' failure to allege facts bearing on the elasticity of demand—the "principle most fundamental to product market definition." *Coronavirus Reporter*, 85 F.4th at 955 (quoting *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir. 1979)). There are many facts that can bear on substitutability, directly or indirectly; Appellants simply failed to support their alleged markets with any. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 (D.C. Cir. 1986) (explaining that various indicia can serve as "proxies for direct proof of substitutability"). Appellants cite no allegation overlooked by the panel, nor any case in tension with its ruling.

*Second*, Appellants seek to rewrite another longstanding decision by claiming plaintiffs can state claims outside of a "strictly defined market" under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). Entities Pet. at 16. But nothing in *Aspen Skiing* eliminates the obligation to allege a plausible market. That case involved a properly defined "relevant product market" that was "not challenge[d]" on appeal. *Aspen Skiing*, 472 U.S. at 596 & n.20. And this Court foreclosed Appellants' argument in *Qualcomm*, where it held that antitrust claims—including refusals to deal challenged under *Aspen Skiing*—require definition of a relevant market and proof of anticompetitive effects in that properly defined market. *Qualcomm*, 969 F.3d at 992–93, 1003; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (plaintiffs must plead facts that "plausibly give rise to an entitlement to relief"). The panel thus did not "overlook" *Aspen Skiing*, Entities Pet. at 15–17, nor does *Aspen Skiing* provide any basis for rehearing.

*Third*, Appellants argue that they need not have alleged a relevant market because they advanced a *per se* tying claim. *See* Entities Pet. at 8; Isaacs Pet. at 1–2. The *per se* rule is not applicable in any event because Appellants did not assert a *per se* tying claim, as explained below. *See infra* pp. 10–12. But even if Appellants had done so, they were still obligated to allege a relevant market. By definition, a tie involves "a seller with market power *in one market*" that "extends its market power to *an entirely distinct market*." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,

7

836 F.3d 1171, 1178 (9th Cir. 2016) (cleaned up and emphases added). Consequently, the "unique per se rule for illegal tying arrangements" entails (among other things) definition of *two* relevant markets, the "tying product market" and the "tied product market." *Cascade Health Sols. v. PeaceHealth*, 515 U.S. 883, 913 (9th Cir. 2008); *accord Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 35–46 (2006). Failing to allege either relevant market is thus fatal to a tying claim. *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971–72 (9th Cir. 2008); *see also Truck-Rail Handling, Inc. v. Burlington N. & Santa Fe Ry. Co.*, 244 F. App'x 130, 131–32 (9th Cir. 2007) (holding that tying claim failed where plaintiffs had "failed [to] properly define the relevant product markets").

Neither of the two decisions that the Entities cite, *see* Entities Pet. at 10, is to the contrary. The first recognizes "any inquiry into the validity of a tying arrangement must focus on the market or markets in which the two products are sold." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 18 (1984). And the second is a long-overruled case irrelevant to Appellants' claims. *Int'l Salt Co. v. United States*, 332 U.S. 392 (1947) (holding that a company could be presumed to have market power over a patented product), *overruled in relevant part by Ill. Tool Works*, 547 U.S. at 39–40. Indeed, Appellants fail to even mention *Illinois Tool Works*, in which the Supreme Court traced through its tying jurisprudence, recognized that the historical "disapproval of tying arrangements" (on which

8

Appellants rely) "has substantially diminished," and held that a plaintiff asserting a *per se* tying claim must "defin[e] the relevant market." 547 U.S. at 33–46; *see also Rick-Mik*, 532 F.3d at 972 n.2 (describing the import of *Illinois Tool Works*). The panel's decision is thus fully consistent with Supreme Court and Ninth Circuit authority.[8]

**B.** The Entities next suggest that the panel "overlook[ed]" their purported "iOS notary stamps" market. Entities Pet. at 12. That too is wrong. The panel expressly recognized Appellants' *attempt* to allege that market. *See Coronavirus Reporter*, 85 F.4th at 956 & n.3. But the panel concluded that such a market failed for the same reason as the other fourteen markets Appellants attempted to allege: They had "made no effort at all to define the market[] or to distinguish [it] from" the other purported markets, nor did the Complaint include the requisite factual allegations to state a plausible notary stamps market. *See id.* That decision breaks from no precedent, and Appellants identify none. *See Hicks*, 897 F.3d at 1120

---

[8] Again, decisions from other circuits are consistent with the panel's conclusion and this Court's precedent. *See, e.g.*, *Kaufman v. Time Warner*, 836 F.3d 137, 141–42, 145 (2d Cir. 2016) (affirming dismissal of tying claim where plaintiff failed to allege a relevant market for tied product); *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 559–60 (8th Cir. 1998) (affirming dismissal of tying claim for "fail[ure] to plead a valid relevant market"); *Queen City Pizza, Inc.*, 124 F.3d at 443 (Third Circuit affirming dismissal of tying claim where plaintiff failed to allege relevant market for tying product).

(affirming dismissal of claims where market was unsupported by sufficient allegations of evidentiary facts).

The Entities' only attempt to suggest error is to point to a "breathtaking concession" at oral argument that "notary stamps are indeed a digital product." Entities Pet. at 13. No citation accompanies that assertion. Apple in fact argued the opposite: Notary stamps are "not a standalone product that can form the basis for a market, much less a single brand one as is alleged here," Apple explained, because they are "not a product" that "Apple is … buying and selling," but rather a mere "technical process" that can "identify a particular piece of software as having been approved." Oral Argument at 22:50–23:32, *Coronavirus Reporter v. Apple Inc.* (9th Cir. Mar. 29, 2023), https://cdn.ca9.uscourts.gov/datastore/media/2023/03/29/22-15166.mp3; *see also* ECF 38 at 30–31 (Apple Answering Brief making same point). There are no plausible allegations to the contrary, nor do Appellants identify any precedent inconsistent with the panel's conclusion that the Complaint failed to allege a plausible relevant market for notary stamps.

## II. The Panel Correctly Rejected Appellants' Unalleged *Per Se* Tying Theory Under Well-Established Supreme Court And Ninth Circuit Law

Appellants also claim the Court failed to address their *per se* tying claim. *See* Entities Pet. at 8–9. That argument is wrong for multiple reasons, and Appellants do not identify any conflict with precedent or overlooked allegation.

10

*First*, the panel did not assess whether *any* of Appellants' theories amounted to exclusionary conduct because the Complaint failed to allege a relevant market or antitrust injury—threshold requirements to all of their claims. *See Coronavirus Reporter*, 85 F.4th at 957. That was correct. As explained above, alleging the relevant markets is a threshold prerequisite to a *per se* tying claim. *See supra* pp. 7–8. The same is true for "causal antitrust injury": It "is a substantive element of an antitrust claim, and the fact of injury or damage must be alleged at the pleading stage." *Somers*, 729 F.3d at 963; *see Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990) ("The right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered antitrust injury."). Appellants do not even challenge the Court's conclusion that they failed to plead antitrust injury. Because market definition and antitrust injury are prerequisites for all of Appellants' claims, the panel thus properly held that *all* of Appellants' antitrust theories—tying or otherwise—failed on those threshold grounds.

Appellants' arguments are particularly inappropriate because they were not raised below and are therefore waived. *See Allen v. Ornoski*, 435 F.3d 946, 960–1 (9th Cir. 2006). Appellants never suggested in the district court that they need not define a relevant market to assert a *per se* tying claim; they argued only that they *had* alleged relevant markets. *See* ER690–93 at 5–8; SER37–38. (Nor, for that

matter, did Appellants ever dispute that allegations of antitrust injury are required. *See* ER696–97.)  The Court should not permit rehearing on long-waived arguments.

*Second*, Appellants have not even alleged a *per se* tying theory.  They challenge the supposed tying of "digital software distribution stores to the iPhone device."  Entities Pet. at 8.  But "[t]echnological tie[s]" involving "technological interrelationship" are outside of the remit of "*per se*" illegality.  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542 (9th Cir. 1983).  This Court recently applied that holding to the very platform challenged here.  *See Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 997 (9th Cir. 2023) (finding "per se condemnation is inappropriate for ties involving software that serves as a platform for third-party applications" (cleaned up)); *accord United States v. Microsoft*, 253 F.3d 34, 84 (D.C. Cir. 2001) (en banc).  So even if Appellants were right that a *per se* tying claim could proceed in theory (and they are not), *they* have pursued a tying claim subject to the rule of reason—which indisputably requires properly alleged markets and antitrust injury.  *See Epic Games, Inc.*, 67 F.4th at 997–98; *Somers*, 729 F.3d at 963.

## III. Isaacs' Petition Is Untimely And Improper

Finally, Isaacs' petition should be denied because it is untimely and makes false and conspiratorial accusations against Apple, Google, and their counsel.  *See* Isaacs Pet. at 6–11.  These allegations are unfounded, untrue, and inappropriate for any legal filing, much less for a narrow petition for rehearing.  They reflect a long

and ongoing effort by Appellants to besmirch Apple and its counsel—despite having been admonished "about the use of *ad hominem* references to opposing counsel." *Primary Prods. LLC v. Apple Inc.*, No. 2:21-cv-00137-JDL, Dkt. 19 (D. Me. July 20, 2021). There is no merit or truth whatsoever to the accusations in Isaacs' petition, and his false claims provide no basis for rehearing. Isaacs' untimely petition should be disregarded.

\* \* \*

In sum, Appellants have identified no conflict between the panel decision and binding law, nor have they identified any issues of exceptional importance or anything that the panel overlooked. The panel properly rejected each of Appellants' antitrust claims under established, binding caselaw. Rehearing is not warranted.

## CONCLUSION

The petitions for rehearing should be denied.

Dated: December 13, 2023

Respectfully submitted,

/s/ *Rachel S. Brass*
Rachel S. Brass

Cynthia Richman
Zachary B. Copeland
Harry R. S. Phillips
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

Rachel S. Brass
Julian W. Kleinbrodt
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105
(415) 393-8200
RBrass@gibsondunn.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3,193 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that, as required by Federal Rule of Appellate Procedure 27(d)(1)(E), this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2019.

Dated: December 13, 2023

/s/ *Rachel S. Brass*
Rachel S. Brass

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Response to Appellants' Petitions for Rehearing** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 13, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  December 13, 2023

/s/ *Rachel S. Brass*
Rachel S. Brass